UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

V.W., Individually and On Behalf of A.H., a
Child With a Disability,

                                    Plaintiff,

                - against -

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                                    Defendant.

**ORDER**

21 Civ. 6495 (PGG) (KHP)

PAUL G. GARDEPHE, U.S.D.J.:

            Plaintiff V.W., on behalf of herself and her minor child, A.H., brings this action

against the New York City Department of Education ("DOE") pursuant to the Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.  (Cmplt. (Dkt. No. 1) at 1, ¶ 1)

            Plaintiffs – who have been represented by the Cuddy Law Firm during this

litigation – have moved for an award of attorneys' fees and costs.  (Pltf. Mot. (Dkt. No. 23))  On

June 27, 2022, this Court referred Plaintiffs' motion to Magistrate Judge Katharine H. Parker for

a Report and Recommendation ("R&R").  (Order (Dkt. No. 40))  In a September 29, 2022 R&R,

Judge Parker recommends that Plaintiffs be awarded $26,729.67 in attorneys' fees incurred in

connection with the underlying administrative proceeding and the instant action; $610.80 in

costs; and post-judgment interest.  (R&R (Dkt. No. 46) at 22-23)  For the reasons explained

below, the R&R will be adopted in its entirety.

## BACKGROUND

**I.      FACTS**

On December 17, 2018, Plaintiff V.W., on behalf of her minor child A.H., filed a

due process complaint alleging violations of the IDEA.  (R&R (Dkt. No. 46) at 1-2)  Plaintiffs

allege that DOE did not provide A.H. – a child who has a disability as defined in the IDEA –

with a free and appropriate public education ("FAPE") for the 2018-2019 and 2019-2020 school

years.  (Id.)  Plaintiffs asked that a Committee on Special Education be re-convened to develop a

new individualized education program ("IEP") for A.H. that included an approved non-public

school and applied behavior analysis ("ABA") therapy.  (Id. at 2)

An impartial hearing officer (the "IHO") conducted a due process hearing on

February 20, April 13, May 30, August 13, and September 12, 2019.  At the May 30, 2019

hearing, DOE offered testimony from school psychologist Frances Tucci and introduced six

exhibits into evidence.  (Id.)  Plaintiffs introduced five exhibits into evidence that day and cross

examined Tucci.  (Id.; Coretti Decl., Ex. C ("Def. Hearing Br.") (Dkt. No. 25-3) at 8)

On September 12, 2019, Plaintiffs offered three additional exhibits and introduced

testimony from (1) Aurora Noriega, A.H.'s teacher; Dr. Emily Levy, "an academic evaluator";

(3) Dr. Jeanne Dietrich, a clinical psychologist; and (4) V.W.  (R&R (Dkt. No. 46) at 2; Def.

Hearing Br. (Dkt. No. 25-3) at 11)

In a May 11, 2020 decision, the IHO concluded that DOE had not offered an

appropriate IEP to A.H. for the 2018-2019 and 2019-2020 school years, and directed that DOE

provide A.H. with a year "in a nonpublic school program for students with Autism which utilizes

ABA; . . . 250 hours of academic tutoring at the rate of $125.00 per hour; and . . . ten hours per

week of in-home ABA."  (R&R (Dkt. No. 46) at 2-3; Coretti Decl., Ex. D (IHO Decision) (Dkt.

No. 25-4) at 10-11; Coretti Decl., Ex. G (State Rev. Officer Decision) (Dkt. No. 25-7) at 3)

On June 22, 2020, DOE appealed the IHO's decision to the State Review Office.

(Id. at 3)  In an August 10, 2020 decision, a State Review Officer ("SRO") upheld the IHO's

decision requiring 250 hours of academic tutoring but rejected the other relief awarded by the

IHO.  (Id.; Coretti Decl., Ex. G (State Rev. Officer Decision) (Dkt. No. 25-7) at 3)

## II.    PROCEDURAL HISTORY

Plaintiffs filed the instant action on July 30, 2021.  (Cmplt. (Dkt. No. 1))

Plaintiffs seek $59,438.31 in attorneys' fees and costs under the IDEA's fee-shifting provision,

20 U.S.C. § 1415(i)(3), as well as pre- and post-judgment interest.  (A. Cuddy Reply Decl. (Dkt.

No. 37) ¶ 4)

On February 24, 2022, DOE offered to settle the instant action for $27,500.00,

pursuant to 20 U.S.C § 1415(i)(3)(D).  (Nimmer Decl. (Dkt. No. 33) ¶ 25; Nimmer Decl., Ex. 1

(Dkt. No. 33-1) ¶ 2)  Plaintiffs rejected the offer.

On June 20, 2022, Plaintiffs moved for summary judgment.  (Pltf. Mot. (Dkt. No.

23))  On June 27, 2022, this Court referred Plaintiffs' motion to Magistrate Judge Parker for an

R&R.  (Order (Dkt. No. 40))  In a September 29, 2022 R&R, Judge Parker recommends that

Plaintiffs be awarded $27,340.00 in attorneys' fees and costs.  (R&R (Dkt. No. 46))

On October 13, 2022, Plaintiffs filed objections to the R&R.[1]  (Pltf. Obj. (Dkt.

No. 48))

---

[1]  In a December 31, 2022 letter, DOE requests a nunc pro tunc extension of its time to file its
opposition to Plaintiffs' objections.  (Def. Dec. 31, 2022 Ltr. (Dkt. No. 50) at 1)  Plaintiffs
oppose DOE's request, noting that DOE requested this relief more than two months after the
deadline to oppose Plaintiffs' objections had passed.  (See Dkt. No. 51; R&R (Dkt. No. 46) at
23-24 ("The parties shall have fourteen days [from service of the September 29, 2022 R&R] . . .

**DISCUSSION**

I.   **LEGAL STANDARDS**

   A.   **Review of a Report and Recommendation**

   A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  Where a timely objection has been made to a magistrate judge's recommendation, the district court judge "shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  <u>Id.</u>  However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the

---

to file written objections . . . [and] fourteen days to serve and file any response.")  DOE states that its request was filed late due to "administrative case management difficulties arising due to the convergence over the past two years of (a) [an] extreme staff shortage and (b) the unforeseen approximate 1000% increase in the filing of these IDEA fees-only actions in this District."  (Def. Dec. 31, 2022 Ltr. (Dkt. No. 50) at 1)  DOE further represents that its attorneys inadvertently confused deadlines in two IDEA fee cases pending before this Court.  (<u>Id.</u> at 2)  Where a party moves for an extension of time after a filing deadline has passed, courts may only grant relief where that party demonstrates that it "failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B); <u>Alexander v. Saul</u>, 5 F.4th 139, 142 (2d Cir. 2021), <u>cert. denied sub nom. Alexander v. Kijakazi</u>, 212 L. Ed. 2d 548, 142 S. Ct. 1461 (2022) ("Because Alexander's failure to appeal in a timely fashion was at least partially due to her own inadvertence, 'excusable neglect,' rather than 'good cause,' is the appropriate standard for assessing her claim.").  In making a determination as to "excusable neglect," courts consider "'[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.'"  <u>Alexander</u>, 5 F.4th at 142 (quoting <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd P'ship</u>, 507 U.S. 380, 395 (1993))

Here, DOE has not demonstrated excusable neglect.  Acknowledging the staff shortage cited by Defendant and the large, unforeseen increase in litigation regarding IDEA fee requests, DOE has not explained why these conditions prevented it from docketing the deadline for opposing Plaintiffs' objections.  If DOE lacked personnel to respond to Plaintiffs' objections, it could have sought an extension of time.  Accordingly, DOE's request for a <u>nunc pro tunc</u> extension of time to oppose Plaintiffs' objections is denied.

original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (second alteration in original) (quoting Vega v. Artuz, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "To the extent . . . that the party . . . simply reiterates the original arguments, [a court] will review the Report strictly for clear error." IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are 'merely perfunctory responses,' . . . 'rehashing . . . the same arguments set forth in the original petition.'") (citing Vega, 2002 WL 31174466, at *1; Greene v. WCI Holdings, 956 F. Supp. 509, 513 (S.D.N.Y. 1997)).

As to portions of an R&R to which no timely objection is made, this Court's review is limited to a consideration of whether there is any "'clear error on the face of the record'" that precludes acceptance of the recommendations. Wingate v. Bloomberg, 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note; citing Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.")).

A party cannot invoke de novo review by citing new facts or making new arguments that the party could have raised in the briefing before the magistrate judge yet did not. See Bolling v. City of New York, 2021 WL 961758, at *6 (S.D.N.Y. Mar. 15, 2021) ("[D]istrict courts 'will ordinarily refuse to consider evidentiary material that could have been, but was not,

presented to the magistrate judge in the first instance.'") (quoting <u>Brown v. Martuscello</u>, 2019 WL 3491461, at *2 (S.D.N.Y. Aug. 1, 2019)); <u>United States v. Gladden</u>, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (declining to consider a "'new argument[] raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but [was] not.'") (quoting <u>Hubbard v. Kelley</u>, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009)).

**B.**     **<u>Attorney's Fee Awards under IDEA</u>**

The IDEA provides that "[w]henever a complaint has been received . . . , the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing[] . . . ." 20 U.S.C. § 1415(f)(1)(A). If a parent is the "prevailing party" at the hearing, the court may award "reasonable attorneys' fees as part of the costs[.]" 20 U.S.C. § 1415(i)(3)(B)(i)(I).

A party seeking an award of attorneys' fees and costs under the IDEA must show (1) that it "is in fact a prevailing party[,]" and (2) that the attorneys' fees and costs sought are reasonable "under the appropriate standard[]." <u>Mr. L. v. Sloan</u>, 449 F.3d 405, 407 (2d Cir. 2006); <u>see</u> <u>H.C. v. N.Y.C. Dep't of Educ.</u>, 2021 WL 2471195, at *3 (S.D.N.Y. June 17, 2021) (discussing two-pronged inquiry). To determine a "reasonable" attorneys' fee award, the court makes an "initial estimate" by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983)). This calculation results in the "lodestar" figure, which the Second Circuit refers to as the "presumptively reasonable fee." <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections</u>, 522 F.3d 182, 190 (2d Cir. 2008). "[T]he presumption that the lodestar represents a reasonable fee award is especially strong, and departures from that figure will be 'rare.'" <u>R.P. v. N.Y.C. Dep't of</u>

6

Educ., 2022 WL 1239860, at *2 (S.D.N.Y. April 27, 2022) (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552-54 (2010)).

"The reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill, 522 F.3d at 190. An attorneys' fee award under the IDEA must be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C); see also 20 U.S.C. § 1415(i)(3)(F)(ii) (providing that where "the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience," the award must be reduced).

In determining the reasonable hourly rate, courts consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Lilly v. City of New York, 934 F.3d 222, 228 (2d Cir. 2019).[2]

A court cannot approve an attorneys' fee request where "the time spent and legal services furnished were excessive considering the nature of the action or proceeding." 20 U.S.C. § 1415(i)(3)(F)(iii). In particular, a "district court should exclude excessive, redundant[,] or otherwise unnecessary hours[]. . . ." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley, 461 U.S. at 433-35). In determining an appropriate award, courts have "ample discretion" to assess the "amount of work that was necessary to achieve the results in a

---

[2] These twelve factors have come to be known as the "Johnson factors." See Lilly, 934 F.3d at 228 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

particular case . . . ."  Ortiz v. Regan, 980 F.2d 138, 141 (2d Cir. 1992) (citing Hensley, 461 U.S. at 437).

In connection with applications for attorneys' fee awards, both parties and the courts must keep foremost in mind that the purpose of fee-shifting statutes is not that "the determination of fees . . . result in a second major litigation."  Fox v. Vice, 563 U.S. 826, 838 (2011) (citation omitted) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants.").  The objective in determining an appropriate attorneys' fee award is "to do rough justice, not to achieve auditing perfection" (id.), and the Johnson factors are intended to be applied in a holistic fashion.  See Green v. City of New York, 2010 WL 148128, at *10 (E.D.N.Y. Jan. 14, 2010); H.A. v. New York City Dep't of Educ., 2022 WL 580772, at *3 (S.D.N.Y. Feb. 25, 2022) ("'A district court need not recite and make separate findings as to all twelve Johnson factors, provided that it takes each into account in setting the attorneys' fee award.'") (quoting E.F. ex rel. N.R. v. N. Y. City Dep't of Educ., 2014 WL 1092847, at *3 (S.D.N.Y. Mar. 17, 2014).  Accordingly, "[d]istrict courts have 'considerable discretion' in determining the 'reasonable hourly rate,'" M.Z. v. New York City Dep't. of Educ., 2023 WL 2499964, at *2 (S.D.N.Y. Mar. 14, 2023) (quoting Arbor Hill, 522 F.3d at 183, 190), and "'may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.'"  Emamian v. Rockefeller Univ., 2022 WL 2056275, at *12 (S.D.N.Y. Feb. 9, 2022) (quoting Fox, 563 U.S. at 838).

The party seeking an award of attorneys' fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

II.      **THE R&R'S FINDINGS AND PLAINTIFFS' OBJECTIONS**

Having prevailed at least in part in the administrative proceedings, Plaintiffs are entitled to an award of "reasonable" fees and costs.   (See R&R (Dkt. No. 46) at 7-8)  As discussed above, in calculating a "reasonable" attorneys' fee award, a court must determine (1) a reasonable hourly rate, and (2) the number of hours reasonably expended on the litigation.  See Blum, 465 U.S. at 888.

In objecting to Judge Parker's recommendation that the fee request be granted only in part, Plaintiffs complain that (1) DOE "unreasonably protracted the administrative proceedings"; and (2) Judge Parker erred in determining both the reasonable hourly rates and the number of hours reasonably expended on the litigation.  (See Pltf. Obj. (Dkt. No. 48))

   A.      **Plaintiffs' Argument that They Have a Right to an Unreasonable Attorney's Fee Award Because DOE Unreasonably Protracted the Administrative Proceedings**

Plaintiff argues that DOE "unreasonably protracted the administrative proceedings" by not (1) filing a response to the due process complaint; (2) holding a resolution meeting after Plaintiffs submitted their due process complaint; and (3) initially responding to Plaintiffs' attorneys' claim for costs and attorneys' fees.  (Pltf. Br. (Dkt. No. 29) at 10)  Plaintiff contends that – by engaging in this conduct – DOE protracted the administrative proceedings and is therefore "responsible for the accrual of attorney[s'] fees [during this period]."  (Id.)  As a result, Plaintiff's requested fees should not be reduced pursuant to 20 U.S.C. § 1415(i)(3)(G). (Id.)

Judge Parker rejects Plaintiff's argument, noting that even where a school district has unreasonably protracted litigation, a court must still find that the fee award sought is reasonable:

> The plain language of the IDEA mandates that the Court grant – in its discretion – only those fees that are <u>reasonable</u>. 20 U.S.C. § 1415(i)(3)(B)(i).  The IDEA commands that the Court base fees "on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(C).  Thus, while certain enumerated sections of the IDEA warrant mandatory reduction, and 1415(i)(3)(G) would except those reductions, the Court must nonetheless determine what a reasonable fee would be in the first instance <u>before</u> making any mandatory reductions.  This reading comports with that of other courts that have squarely addressed the issue, including opinions in this District that have rejected the argument [that Plaintiff] renews here.

(<u>Id.</u> at 8-9 (collecting cases); <u>see</u> <u>also</u> <u>id.</u> at 8 ("The law is not that the Court <u>must</u> grant <u>all</u> of the Plaintiff's requested fees [where a school district has unreasonably protracted litigation and thus violated Section 1415 (i)(3)(G)].") (emphasis in original).

### 1.    <u>Plaintiffs' Objections</u>

In their objections to the R&R, Plaintiffs contend that (1) Judge Parker's reading of the statute renders Section 1415(i)(3)(G) superfluous and undermines the purpose of the IDEA; (2) Section 1415(i)(3)(G) is "mandatory," such that where a school district has been found to have protracted litigation, no reduction may be applied to a plaintiff's fee request; and (3) Judge Parker erred in not making a finding as to whether the DOE unreasonably protracted litigation in this case.  (Pltf. Obj. (Dkt. No. 48) at 8-11)

Title 20, United States Code, Section 1415(i)(3) provides that

**(F) Reduction in amount of attorneys' fees:**  Except as provided in subparagraph (G), whenever the court finds that –
(i) the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy; (ii) the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience; (iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding; or (iv) the attorney representing the parent did not provide to the local educational agency the appropriate information in the notice of the complaint described in subsection (b)(7)(A), the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this section.

10

(G) **Exception to reduction in amount of attorneys' fees:** The provisions of subparagraph (F) shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section.

20 U.S.C. § 1415(i)(3)(F)-(G).

This Court reads subsections (G) and (F) to essentially cancel each other out where a school district has unreasonably protracted an IDEA proceeding. In other words, a court may not find that a plaintiff or his or her counsel protracted the litigation pursuant to subsection (F) once the court determines that the school district has unreasonably protracted the litigation. See Somberg v. Utica Cmty. Sch., 908 F.3d 162, 181 (6th Cir. 2018) ("The text of subparagraph (G) thus appears to prohibit a court from reducing a fee award in accordance with subparagraph (F) when the court finds that the school district unreasonably protracted resolution of the proceedings.")

But this Court does not read subsections (F) and (G) to authorize a plaintiff to obtain (1) whatever amount of fees he or she demands; or (2) an award premised on excessive hourly rates or an excessive number of hours. Any such interpretation of these provisions would lead to absurd results.

As an initial matter, the IDEA provides that courts "may award reasonable attorneys' fees" to prevailing parties. Id. § 1415(i)(3)(B)(i). The Act does not authorize courts to grant unreasonable attorneys' fee awards. The first step in analyzing a request for an award of attorneys' fees and costs under the IDEA is thus to determine what a reasonable award would be, prior to any reduction necessitated by subsection (F). Nothing in subsection G excuses a prevailing party from demonstrating that their requested fee award is reasonable, and nothing in subsection G grants a prevailing party a right to obtain an unreasonable fee award. And as Judge Parker recognizes, the Cuddy Law Firm's arguments on this point – that it has a right to an

11

unreasonable fee award under subsection (G) – have been repeatedly rejected.  See, e.g., D.P. v. New York City Dep't of Educ., 2022 WL 103536, at *12 (S.D.N.Y. Jan. 10, 2022) ("[E]ven a finding of unreasonable protraction would not permit this Court to jettison the "presumptively reasonable fee" analysis outlined above."); M.H. v. New York City Dep't of Educ., 2021 WL 4804031, at *25 (S.D.N.Y. Oct. 13, 2021) ("[A] conclusion that Defendant unreasonably protracted the resolution of the proceedings . . . might justify the reasonableness of some of the hours worked by counsel and the paralegals.  However, it would not entitle [the Cuddy Law Firm] to more than a reasonable attorney[s'] fee. . . ."); C.B. v. New York City Dep't of Educ., 2022 WL 3577837, at *10 (S.D.N.Y. Aug. 19, 2022) ("As a preliminary matter, the Court notes that even if the Court agreed that Defendant's actions unreasonably protracted this litigation, the law is not that the Court therefore must grant all of the Plaintiff's requested fees.") (emphasis in original).

    Accordingly, this Court will go on to consider whether the costs and attorneys' fee award Plaintiffs request is reasonable.[3]

---

[3]  Because a finding that DOE "unreasonably protracted" the administrative proceedings under Subsection (G) "would not permit this Court to jettison the 'presumptively reasonable fee' analysis outlined above," D.P., 2022 WL 103536, at *12, it is irrelevant that Judge Parker did not make a "substantive finding" as to unreasonable protraction.  (See Pltf. Obj. (Dkt. No. 48) at 10)  In any event, the DOE actions cited by Plaintiffs – its failure to file a response to Plaintiffs' due process complaint; DOE's failure to conduct a resolution meeting, and its initial failure to respond to the Cuddy Law Firm's fee request – do not to constitute unreasonable protraction. Indeed, other courts in this District have rejected the Cuddy Law Firm's arguments on these points.  Id. ("To be sure, Defendant's conduct increased the work that had to be done by . . . [the Cuddy Law Firm because the DOE did not (1)] participate in a mandatory resolution session . . . thus necessitating the IHO hearing . . . [and (2)] offered no settlement proposals . . . . But on the facts of this case, the Court is not willing to say that Defendant 'unreasonably protracted' . . . this case.").  As in other IDEA fee cases brought by the Cuddy Law Firm, "Plaintiffs offer 'no evidence [demonstrating] . . . that [any] delay [attributable to the DOE] was "unreasonable.""' T.H. v. New York City Dep't of Educ., 2022 WL 16945703, at *6 (S.D.N.Y. Nov. 15, 2022), report and recommendation adopted, 2022 WL 17991623 (S.D.N.Y. Dec. 29, 2022) (quoting F.N. v. New York City Dep't of Educ., 2022 WL 3544128, at *2 (S.D.N.Y. Aug. 18, 2022))

### B.   The R&R's Reasonable Hourly Rate Determination

Plaintiffs contend that the following hourly rates are appropriate for Cuddy Law Firm attorneys and staff:

$550 for senior attorney Andrew Cuddy;

$400-$450 for mid-level attorneys Justin Coretti, Kevin Mendillo, and Benjamin Kopp; and $225 for paralegals.

(A. Cuddy Decl. (Dkt. No. 26) ¶ 59; Ex. A (Dkt. No. 26-1) at 1; Ex. B (Dkt. No. 26-2) at 1))

In support of these billing rates, Plaintiffs submitted declarations from Adrienne Arkontaky, the Cuddy Law Firm's managing attorney (Arkontaky Decl. (Dkt. No. 27)), and several other Cuddy attorneys (A. Cuddy Decl. (Dkt. No. 26); Kopp Decl. (Dkt. No. 28); Coretti Decl. (Dkt. No. 25)).  In these declarations, the Cuddy attorneys attest to hourly rates agreed to and paid by other Cuddy clients, as well as hourly rates DOE has paid to plaintiffs' counsel in other IDEA cases.  (See Arkontaky Decl. (Dkt. No. 27) ¶¶ 13-16, 20, 24-27, 30-34; A. Cuddy Decl. (Dkt. No. 26) ¶¶ 54-55; Kopp Decl. (Dkt. No. 28) ¶¶ 16-18)  Plaintiffs also referenced affidavits and declarations filed in other cases by attorneys who specialize in IDEA litigation (see Kopp Decl. (Dkt. No. 28) ¶¶ 19, 22), and provided a "table displaying IDEA fee award amounts in the Southern District of New York since 1998," noting also what those fee awards would be today after accounting for inflation.  (A. Cuddy Decl. (Dkt. No. 26) ¶ 6; A. Cuddy Decl., Ex. D (Dkt. No. 26-4))  Finally, Plaintiffs submitted records obtained from DOE through the New York Freedom of Information Law ("FOIL") showing the attorneys' fees requested and actual settlement amounts in other IDEA cases.  (Kopp Decl., Exs. 3-10 (Dkt. Nos. 28-3-28-10))

After considering the Johnson factors, Judge Parker concludes that Plaintiff's requested hourly rates are "not reasonable."  (R&R (Dkt. No. 46) at 7-8)  In reaching this

conclusion, Judge Parker acknowledges the successful result that the Cuddy Law Firm achieved: the firm "was able to secure the Defendant's compliance with the IHO's order and the SRO's decision, and ensure implementation of the awarded relief." (Id. at 10-11) And while the underlying "case was not overwhelmingly complex, [it was] also not as straightforward as the Defendant suggests," because DOE "contested the remedies sought," "the parties presented a total of five witnesses and almost a dozen exhibits," and "Defendant appealed to the SRO[,] which required additional briefing and a resolution on the merits." (Id. at 11)

Judge Parker nonetheless finds that

the documents submitted by Plaintiffs have failed to substantiate the reasonableness of [the Cuddy Law Firm's] requested fees under the Johnson factors. First, there is no evidence that taking this case prevented [the firm] from accepting other cases. Second, the issues litigated were not especially novel or difficult. Third, awards in similar cases are significantly lower than the rates requested by [the firm]. See M.M., 2022 WL 3043218, at *6 (collecting cases).

(Id. at 11-12)

Judge Parker further concludes that the "documents Plaintiffs provide[] [in support of their fee application] do not contradict this finding." (Id. at 12)

As to the records obtained through FOIL requests – which show the requested attorneys' fees and actual settlement amounts in other IDEA cases – Judge Parker finds that while "the rates predictably vary, [] many do fall within the range of $350 to $500. Therefore, they are consistent with the rates typically awarded in similar cases in this district." (Id.)

As to Plaintiffs' argument that DOE "often attempts to 'low-ball'" the Cuddy Law Firm and other firms that frequently litigate IDEA cases, Judge Parker finds that the City's retainer agreement with Hoguet, Newman, Regal & Kenny, LLP ("Hoguet") – which litigates IDEA fee disputes on the Law Department's behalf – "'do[es] not substantiate the reasonableness of [the Cuddy Law Firm's] requested fees.'" (Id. (quoting M.M., 2022 WL

14

3043218, at *7))  Instead, "'the fees paid by the Law Department to Hoguet are substantially similar to the typical fees awarded to plaintiff's attorneys by courts in this district.'"  (Id. (quoting M.M., 2022 WL 3043218, at *7))

As to the Cuddy Law Firm's retainer agreements, Judge Parker finds that they do not demonstrate that "reasonable clients are willing to pay the requested hourly rates," because the retainer agreements do not address "the novelty and difficulty of the questions raised, the level of skill required, and relevant time limitations imposed by the client, or the results obtained in those cases."  (Id. at 13)  Moreover, "many of the retainer agreements 'explicitly do not cover IDEA-related due process hearings unless the clients signed a separate retainer agreement.'"  (Id. (quoting C.B., 2019 WL 3162177, at *7))  For "similar reasons," Judge Parker finds that the table of IDEA fee awards submitted by Plaintiffs is "of limited value in that it does not attempt to relate the cited cases to the one currently before the Court."  (Id.)  Judge Parker thus concludes that "neither the retainer agreements nor the table adequately demonstrate that similarly situated reasonable clients are willing to pay the rates [the Cuddy Law Firm] has requested in this action."  (Id. at 13-14)

With respect to the specific rates requested, Judge Parker finds that,

> [a]s to attorneys Mendillo and Kopp, Plaintiffs do not provide sufficient information about their experience and background to justify their requested rate. Plaintiffs only provide that Mendillo joined [the Cuddy Law Firm] in 2018 and currently manages [the firm's] Cleveland office, and Kopp joined [the firm] in 2018 and currently has six years' experience.  This is not sufficient information to justify awarding a rate that is generally higher than what is awarded in similar cases.

(Id. at 14)

Judge Parker further finds that Plaintiffs'

> request that paralegals be compensated at $225.00 per hour is excessive. Plaintiffs have not articulated sufficient rationale to award such an exorbitant rate in light of

15

the prevailing rates in this district of $100 to $125 per hour for paralegal work in similar cases.

(Id. at 14-15 (citations omitted))

After considering the Johnson factors, Judge Parker concludes that the following billing rates are appropriate:  $425 for Andrew Cuddy; $325 for Coretti and Mendillo; $225 for Kopp; and $125 for the paralegals.  (R&R (Dkt. No. 46) at 15)

### 1.  Plaintiffs' Objections

Plaintiffs object to nearly every sentence of Judge Parker's reasonable hourly rate analysis.  (See Pltf. Obj. (Dkt. No. 48) at 8-21)  Although several of the objections are difficult to understand, the Court addresses each below.

Plaintiffs complain about Judge Parker's finding that there is no evidence that the Cuddy Law Firm was not able to pursue other work after it took on the instant litigation, asserting that Judge Parker did not explain "why this factor has anything to do with the price of tea in China, much less the price of attorneys in this matter."  (Id. at 11)  The simple answer to Plaintiffs' objection is that "the preclusion of employment by the attorney due to acceptance of the case" is one of the Johnson factors.  Lilly, 934 F.3d at 228; M.M., 2022 WL 3043218, at *8 ("[T]here is no evidence that taking this case prevented the Firm from accepting other cases.").  Judge Parker correctly finds that the firm's work on the instant case did not preclude it from taking on other matters, and therefore this factor does not justify the inflated billing rates sought here.  (R&R (Dkt. No. 46) at 11)

Plaintiffs next complain that the "R&R improperly conflates the . . . difficulty of [the] contest and [of getting] relief. . . with [the complexity of the] underlying issues."  (Pltf. Obj. (Dkt. No. 48) at 11-12)  Plaintiffs do not cite any case supporting the analytical distinction between the "difficulty of [the] contest" and the complexity of the "underlying issues," however.

16

On the contrary, Plaintiffs cite <u>S.P. v. New York City Dep't of Educ.</u>, which addresses the "complexity of the underlying issues," and the vigor with which the DOE contested the relief sought, in the same breath.  <u>S.P.</u>, 2022 WL 109266, at *5 (S.D.N.Y. Jan. 11, 2022) (distinguishing an earlier case in which the due process hearing "was uncontested and lasted less than two hours, [and addressed] 'relatively straightforward issues.'  The DOE itself acknowledged the complexity of the hearing underlying this case, which lasted multiple days.") (quoting <u>S.J. v. N.Y.C. Dep't of Educ.</u>, 2021 WL 100501 (S.D.N.Y. Jan. 12, 2021), <u>modified</u>, 2021 WL 536080 (S.D.N.Y. Jan. 25, 2021)).

In any event, Plaintiffs have not offered any evidence or argument demonstrating that the "issues" addressed at the underlying hearing here were novel or complex.  (<u>See</u> Pltf. Obj. (Dkt .No. 48)) at 11-12)  The questions that Plaintiffs say this case presented – "what is the least restrictive environment for A.H., what should his program look like once his placement is appropriate, how many hours of ABA does he need moving forward and in what ratio between at-home/in-school hours, how many hours of tutoring would put A.H. back in the position he would have had but for DOE's denial of FAPE?" (<u>id.</u>) – are typical issues for a hearing in an IDEA case.  Accordingly, this Court agrees with Judge Parker that while this case was "not as straightforward as the Defendant suggests[,] . . . the issues litigated were not especially novel or difficult."  (R&R (Dkt. No. 46) at 10-12)

Plaintiffs also object to Judge Parker's citation to <u>M.M.</u>, 2022 WL 3043218, in support of her conclusion that "awards in similar cases are significantly lower than the rates requested [here]."  (<u>Id.</u> at 11-12; Pltf. Obj. (Dkt. No. 48) at 13)  Plaintiffs complain that <u>M.M.</u> is inapposite because "DOE announced on the first day [of the hearing in that case] that it would not present a case and then did not appeal the IHO's decision."  (Pltf. Obj. (Dkt. No. 48) at 13)

But Judge Parker cites M.M. for a different purpose, which is to recount Judge Ramos' finding that the Cuddy Law Firm's billing rates have been the subject of "no less than twenty federal fees cases in this district since 2018," and that "the rates awarded to the Firm have varied depending on the facts of each case; for A. Cuddy, the hourly rate determined to be reasonable has ranged from $350 an hour to $550 an hour at the high end." M.M., 2022 WL 3043218 *6 (collecting cases). It is thus irrelevant that the administrative proceedings in M.M. were not as contested as the administrative proceedings here. (See Pltf. Obj. (Dkt. No. 48) at 12)

Plaintiffs' complaint that M.M. cites to cases that rely on outdated billing rates is not persuasive. Plaintiffs focus on a series of cases in which courts awarded rates between $350 and $475 per hour: R.G. v. NYC DOE, 2019 WL 4735050 (S.D.N.Y. Sept. 26, 2019), citing M.D. v. NYC DOE, 2018 WL 4386086 *3 (S.D.N.Y. Sept. 14, 2018), citing in turn C.D. v. Minisink Valley Cent. Sch. Dist., 2018 WL 3769972 *6 (S.D.N.Y. Aug. 9, 2018). According to Plaintiffs, these cases in turn rely on billing rates awarded in outdated cases from the 2011 to 2014 time period. (Pltf. Obj. (Dkt. No. 46) at 13-14) But Plaintiffs have cherry picked a single line of cases out of the dozens cited in M.M., all but one of which found the Cuddy Law Firm's requested billing rates to be excessive. Moreover, the administrative proceedings in the instant case began in 2018 (Cmplt. (Dkt. No. 1) ¶ 8), at about the same time that proceedings began in M.M. and in several of the cases referenced in M.M. See, e.g., M.M., 2022 WL 3043218, at *1 (S.D.N.Y. Aug. 2, 2022) ("On March 1, 2019, M.M. filed a complaint."); D.P., 2022 WL 103536, at *1 ("In or about August 2018, Plaintiff consulted with, and subsequently retained, [the Cuddy Law Firm]."); K.O. v. N.Y.C. Dep't of Educ., 2022 WL 1689760 at *1 (S.D.N.Y. May 26, 2022) ("K.O. initiated Case Number 178593 on October 11, 2018."). In all of these cases, courts awarded rates similar to those recommended by Judge Parker. In sum, the case law

cited by Judge Parker provides compelling support for her finding that the rates requested here are excessive.

Plaintiffs next contend that Judge Parker misinterpreted certain data Plaintiffs provided in support of their fee application, including spreadsheets of hourly rates that DOE agreed to pay in settling other IDEA cases.  (Pltf. Obj. (Dkt. No. 48) at 14-15)  Judge Parker explicitly considers this data, however, and notes that "many [of the rates listed in the spreadsheets] fall within the range of $350 to $500" – i.e., within the range of rates awarded to Cuddy Law Firm lawyers who litigated cases in this District.  (R&R (Dkt. No. 46) at 12 (citing Kopp. Decl., Exs. A-L, (Dkt. Nos. 28-1-28-12)))  Plaintiffs appear to argue that Judge Parker did not extrapolate correctly from this raw data which – according to Plaintiffs – should be read to show that prevailing rates are higher than rates agreed to as part of settlements.  (Pltf. Obj. (Dkt. No. 48) at 14-16)  However, "[n]one of this data is analyzed or summarized [in Plaintiffs' briefing] in any depth."  M.M., 2022 WL 3043218, at *7.  For example, the spreadsheets submitted by Plaintiffs do not identify the specific billing attorneys to whom the rates apply. (See Kopp. Decl., Ex. H, (Dkt. No. 28-8) at 33) (indicating a billing rate of $375 per hour for all Cuddy Law Firm staff in connection with a 2019 settlement))  In sum, this Court agrees with Judge Parker – and with Judge Ramos – that Plaintiffs' data demonstrates that billing rates ranging from $350-$500 per hour remain prevalent for IDEA litigation.[4]

_____

[4]  Plaintiffs complain that (1) the R&R would require the Cuddy Law Firm to include a full Johnson analysis in its retainer agreements, and (2) "creates an impermissible standard in requiring [the firm's] table of inflation calculations . . . to 'relate . . . to the [case] before the Court.'"  (Pltf. Obj. (Dkt. No. 48) at 19-20 (quoting R&R (Dkt. No. 46) at 13))  Judge Parker does not find the Cuddy Law Firm's retainer agreements helpful in determining reasonable billing rates here, because they do not address "the novelty and difficulty of the questions raised, the level of skill required, any relevant time limitations imposed by the client, or the results obtained in those cases."  (R&R (Dkt. No. 46) at 13)  This Court agrees with Judge Parker that the Cuddy Law Firm has not explained the relevance of its retainer agreements and its "inflation

Plaintiffs next complain that the "R&R does not explain its diversion [from the principle elucidated in D.B. v. New York City Dep't of Educ., 2019 WL 6831506 (S.D.N.Y. Apr. 22, 2019) report and recommendation adopted, 2019 WL 4565128 (S.D.N.Y. Sept. 20, 2019) and Silva v. Legend Upper W. LLC., 590 F. Supp. 3d 657 (S.D.N.Y. 2022)] . . . that the most experienced attorney receives the requested rate that may even be 'at the upper limit of what courts in this District have deemed reasonable.'"  (Pltf. Obj. (Dkt. No. 48) at 16-18 (quoting Silva, 590 F. Supp. 3d at 664))  But nothing in D.B. and Silva casts doubt on Judge Parker's recommendations here.

In D.B., Judge Ramos notes that courts "have awarded between $300 and $475 per hour to senior or experienced attorneys in IDEA cases."  Judge Ramos then goes on, however, to award a rate of $450 per hour to a senior partner at the national firm of Morrison & Foerster, just $25 per hour more than the rate awarded to Andrew Cuddy here.[5]  D.B., 2019 WL 6831506, at *2-4.

---

calculations" to the question of whether the billing rates requested in the instant case are reasonable.  As discussed above, that question is properly analyzed pursuant to the Johnson factors.

Finally, Plaintiffs contend that Judge Parker errs in concluding that the firm's retainer agreements and its "inflation table" "express an improper legal conclusion on the ultimate legal issue of whether the Plaintiff[s'] requested fees are reasonable."  (R&R (Dkt. No. 46) at 13; Pltf. Obj. (Dkt. No. 48) at 20-21)  Any error in this point is irrelevant, however, because – as the Cuddy Law Firm acknowledges – the essential problem with this evidence is that it does not "state anything about reasonableness."  (Pltf. Obj. (Dkt. No. 48) at 20-21)

[5]  Plaintiffs further argue that the "departure from D.B." unfairly privileges pro bono attorneys over full-time IDEA attorneys.  (See Pltf. Obj. (Dkt. No. 48) at 17-18)  This argument is not persuasive, given that (1) the fee recommended by Judge Parker and the fee awarded in D.B. differs by only $25; and (2) there is nothing in the R&R that suggests Judge Parker is privileging pro bono attorneys over V.W.'s attorneys.

Plaintiffs also contend that Judge Parker should have adopted the billing rates approved in Y.G. v. New York City Dep't of Educ., which is the only case in this District in which the Cuddy Law Firm was awarded the billing rates it seeks here.  (Pltf. Obj. (Dkt. No. 48) at 17-18)  2022 WL

Likewise, in <u>Silva</u>, a Fair Labor Standards Act case, this Court noted that a $450 per hour rate was "at the upper limit of what Courts in this District have deemed reasonable for experienced litigators in wage-and-hour cases." <u>Silva</u>, 590 F. Supp. 3d at 664. <u>Silva</u> has no application here, because the instant case is not an FLSA case. In any event, the top rate awarded in <u>Silva</u> is similar to the rate awarded to Andrew Cuddy here.

Plaintiff next complains that Judge Parker does not recognize "that the City's retainer for IDEA fee litigation . . . is evidence that the lower, district-side rates for the lowest-compensated, least-specialized, and most-disparaged part of litigation are still higher than what several of the courts have awarded for even substantive IDEA hearings." (Pltf. Obj. (Dkt. No. 48) 18-19) This argument – which references a retainer agreement between DOE and Hoguet, a firm it has hired to defend IDEA fee cases – is irrelevant to whether the rates Plaintiffs seeks here are reasonable. The Cuddy Law Firm has not offered evidence that it is entitled to substantially higher rates than the attorneys retained by DOE, who are paid at the following scale: "$400 per hour for partners, $300 per hour for associates, and $100 per hour for paralegals." (R&R (Dkt. No. 46) at 12 (citing Andrew Cuddy Decl., Ex. C (Dkt. No. 26-3))) As Judge Parker notes, these rates "'are substantially similar to the typical fees awarded to plaintiff's attorneys by courts in this district.'" (<u>Id.</u> (quoting M.M., 2022 WL 3043218, at *7))

---

1046465 (S.D.N.Y. Apr. 7, 2022). As noted by other judges in this District, however, <u>Y.G.</u> is an outlier. <u>M.M.</u>, 2022 WL 3043218, at *6 ("The Firm has been awarded its requested rate of $550 an hour for A. Cuddy in only one case, however."); <u>B.C. v. New York City Dep't of Educ.</u>, 2022 WL 3214374, at *4 (S.D.N.Y. Aug. 9, 2022), <u>on reconsideration</u>, (S.D.N.Y. Mar. 1, 2023) ("[The Cuddy Law Firm] has been awarded its requested rate of $550 an hour for A. Cuddy in only one case, however."); <u>T.H.</u>, 2022 WL 16945703, at *4 (describing <u>Y.G.</u> as an "outlier decision in which [the] administrative hearing [was] 'heavily contested' and therefore [the Cuddy Law Firm was] awarded [the] requested rates"). Accordingly, Judge Parker did not err in deciding not to rely on <u>Y.G.</u>

Finally, Plaintiffs asserts that (1) the credentials of Cuddy Law Firm attorneys Mendillo and Kopp have been reviewed by other judges in this District; (2) the R&R incorrectly states that Mendillo joined the Cuddy Law Firm in 2018, when he in fact joined the firm in 2014; and (3) Judge Parker has endorsed a paralegal rate of $250 in another case and "provides no basis for diverting from this finding."  (Pltf. Obj. (Dkt. No. 48) at 21)  None of these objections is persuasive.

As to other judges' review of Mendillo and Kopp's credentials, it was Plaintiffs' responsibility to "provide sufficient information [in this case] about their experience and background to justify their requested rate[s]."  Judge Parker was not obligated to search Westlaw to try to find prior decisions that justify the Cuddy Law Firm's requested rates.  (R&R (Dkt. No. 46) at 14)

As to Judge Parker's error as to when Mendillo started work at the Cuddy Law Firm, there is no reason that this error led Judge Parker to recommend a lower billing rate for him.  Judge Parker concluded that Mendillo's billing rate should be the same as Coretti's, who joined the Cuddy Law Firm in 2015.  (Id. at 15)

As to Plaintiffs' claim that Judge Parker recommended a $250 billing rate for a paralegal in another case, Plaintiffs are incorrect.  Judge Parker recommended a rate of $100 in the case Plaintiffs cite.  See Top Jet Enterprises, Ltd. v. Kulowiec, 2022 WL 1184245, at *1, *4 (S.D.N.Y. Apr. 21, 2022) ("[C]ourts in this District generally find that reasonable hourly rates for paralegal[s] . . . range from $150 to $250. . . .  I find that $100 is a reasonable rate.").  Moreover, Top Jet is a commercial case, and not an IDEA case.  Id.

In sum, none of Plaintiffs' objections regarding Judge Parker's recommendations regarding appropriate billing rates has merit.  Accordingly, this Court will adopt her

recommendations that "the hourly rate for [Andrew] Cuddy be set at $425, Coretti and Mendillo at $325, Kopp at $225, and paralegals at $125."  (R&R (Dkt. No. 46) at 15)

### C.    The R&R's Reasonable Hours Expended Analysis

Plaintiffs seek attorneys' fees for 102 hours expended in the administrative proceeding (Andrew Cuddy Decl., Ex. A (Dkt. No. 26-1) at 1) and 44.6 hours expended in the instant federal court action (Andrew Cuddy Reply Decl., Ex. A (Dkt. No. 37-1) at 1)).  Judge Parker finds that the Cuddy Law Firm billed excessive hours during both the administrative proceedings and in the instant action.  (R&R (Dkt. No. 46) at 15-19)

Judge Parker explains in detail why the hours billed are excessive, and she cites ample case law in support of her findings.  As to the administrative proceedings – for which the Cuddy Law Firm billed 102 hours – Judge Parker notes that 6.5 hours were billed for preparation of a four-page due process complaint, and 14 hours were billed for a closing brief that "largely summarizes the impartial hearing transcript and cites to the same evidence contained in the [due process complaint]."  (Id. at 15; see also Coretti Decl., Exs. A-B (Dkt. No. 25-1-25-2))  Cuddy attorneys also billed 6.1 hours to prepare for a three-minute telephone conference and 2.5 hours to prepare for a 3-minute hearing.  (R&R (Dkt. No. 46) at 15-16)  Judge Parker also notes that at the SRO level "Mendillo, Kopp and Coretti collectively billed approximately 21 hours drafting the response to the Defendant's appeal including several hours of legal research, which is extremely excessive, given that Plaintiff[s'] response consisted of largely recycled arguments made in their closing brief . . . and only sparingly cites to case law." (Id.)  While acknowledging that the Cuddy Law Firm had "removed time it considered duplicative or otherwise not compensable," Judge Parker nonetheless recommends an across-the-board 15% reduction for

hours billed to the administrative proceeding, given the excessive billing summarized above.  (Id. at 16)

As to the instant federal court proceeding, Cuddy Law Firm lawyers billed 44.6 hours.  (Andrew Cuddy Reply Decl., Ex. A (Dkt. No. 37-1) at 1)  In finding this billing excessive, Judge Parker notes that two attorneys billed almost four hours to draft "a 5.5-page complaint [that] contains approximately 2 pages of boiler-plate language."  (R&R (Dkt. No. 46) at 17)  Judge Parker also notes that Cuddy lawyers billed 10 hours in connection with "Plaintiff[s'] motion for summary judgment, which included a 25-page memorandum of law, [and] four declarations with several exhibits each. . . . [Judge Parker observes that the Cuddy Law Firm's submissions] are substantially similar to those [filed] in [the firm's]'s other cases and should have taken less time."  (Id.)  Judge Parker also finds that the Cuddy Law Firm billed excessive hours for preparing its 9-page reply, which is also "substantially similar to at least four other motions [the Cuddy Law Firm] has litigated and contains the same arguments[,] including that Southern District rates should apply, the relevance of Hoguet's rates, and [that] Defendant's offer of settlement does not preclude the fees sought."  (Id.)  Finally, Judge Parker notes that the Cuddy Law Firm billed 4.6 hours to "review, remove duplicative time, and finalize its billing statements.  However, as at least one court has noted, the 'DOE should not have to compensate [the Cuddy Law Firm] for administrative clean-up of their own entries.'" (Id. at 18 (quoting R.G., 2019 WL 4735050, at *4))  For all these reasons, Judge Parker recommends a 30% across-the-board reduction to the hours billed in the instant federal court action.  (Id.)

As to costs, the Cuddy Law Firm seeks $935.06 in expenses incurred in connection with the administrative proceeding – including printing, lodging, postage, meals, mileage, parking, and tolls – and $402.00 in filing fees related to the federal action.  (Andrew

Cuddy Decl. (Dkt. No. 26) ¶ 59; Andrew Cuddy Reply Decl., Ex. A (Dkt. No. 37-1))  Judge

Parker recommends cutting the Cuddy Law Firm's request for printing, travel, and mileage costs.

(R&R (Dkt. No. 46) at 19-20)

As to printing, the Cuddy Law Firm charged $0.50 per page, which Judge Parker

reduced to the "'going rate' of $0.10 per page."  (Id. at 19 (approving $59.20 in printing

expenses rather than the $296 requested) (quoting C.B., 2022 WL 3577837, at *9))

Judge Parker recommends reducing Coretti's rate for travel time to "$162.50 per

hour," half the recommended hourly rate, and limiting Coretti to "billing for one hour of travel

time each way for his trips."  (Id.)  "As for Coretti's travel-related expenses (food, mileage, tolls,

parking, and lodging)," Judge Parker recommends that they "be capped at $120 in total ($60 per

trip)."  (Id. at 20)  This Court agrees with other courts that "'it is doubtful that a reasonable client

would retain an Auburn[, New York attorney such as Coretti] over a New York City attorney if it

meant paying New York City rates and an additional five hours in billable time for each trip.'"

J.R. v. New York City Dep't of Educ., 2021 WL 3406370, at *6 (S.D.N.Y. Aug. 4, 2021)

(quoting K.F. v. N.Y.C. Dep't of Educ., 2011 WL 3586142, at *6 (S.D.N.Y. Aug. 10, 2011)).

After applying the billing rate reductions and the 15% and 30% across-the-board

reductions in hours discussed above, Judge Parker concludes that Plaintiffs are entitled to

$27,340.47, which is $159.53 less than DOE's February 24, 2022 settlement offer of $27,500.

(R&R (Dkt. No. 46) at 20-21)  Judge Parker thus recommends that no fees be awarded for work

the Cuddy Law Firm performed after DOE's February 24, 2022 settlement offer.  (Id.)

## 1.   Plaintiffs' Objections

Plaintiffs complain that – in finding that the Cuddy Law Firm billed excessive

hours in preparing for very brief status conferences in the administrative proceedings – Judge

Parker does not acknowledge that the firm was, in effect, preparing for the substantive hearing that ultimately took place on September 12, 2022.[6]  (Pltf. Obj. (Dkt. No. 48) at 21-22)  While some of the time billed in preparation for the August 12, 2022 conference might have been useful in preparing for the September 12, 2022 hearing, the fact remains that Cuddy lawyers billed 6.1 hours for a three-minute telephone conference, and 2.5 hours for a three-minute hearing.  (R&R (Dkt. No. 46) at 15-16)  Accordingly, Plaintiffs' arguments do not undermine Judge Parker's findings that Cuddy lawyers billed excessive hours during the period prior to August 12, 2022, and that they billed excessive hours in connection with briefing.

Plaintiffs also challenge Judge Parker's decision to apply an across-the-board 15% reduction instead of applying specific reductions to the hours billed in connection with the administrative proceeding.  (Pltf. Obj. (Dkt. No. 48) at 22-23)  As discussed above, however, Judge Parker listed many reasons why the hours billed were excessive – not merely the over-preparation for the status conferences – to justify her recommended across-the-board reduction in hours billed.  (See R&R (Dkt. No. 46) at 15-16)  And it is well established that a "district court may exercise its discretion and use a percentage deduction 'as a practical means of trimming fat from a fee application.'"  McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir. 2006) (quoting Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998)); see also R.P., 2022 WL 1239860, at *5, *7 (reducing hours billed on administrative proceeding by 20% and hours billed on federal action by 30%); M.D., 2021 WL 3030053, at *5-6 (reducing hours billed on administrative proceeding by 20% and hours billed

---

[6]  Plaintiffs do not object to Judge Parker's findings that Cuddy lawyers billed excessive hours in connection with the limited briefing submitted during the administrative proceedings.

on federal action by 50%).  This Court adopts Judge Parker's recommendation to impose a 15% across-the-board reduction to account for the excessive billing in the administrative proceeding.

As to Judge Parker's recommendation that a 30% across-the-board reduction be applied to hours billed in connection with the instant federal action, Plaintiff objects to Judge Parker's observation that Cuddy lawyers "recycled arguments and exhibits to support [the firm's] claim[s], and for such 'volume work,' there should be an economy of scale that leads to [fewer] hours being expended. . . ."  (R&R (Dkt. No. 46) at 17 (citing M.R. v. New York City Dep't of Educ., 21-cv-5503 (VEC) (Dkt. Nos. 17-22, 25); M.D. v. New York City Dep't of Educ., 21-cv-9180 (LGS) (Dkt. Nos. 12-17); M.Z. v. New York City Dep't of Educ., 21-cv-9451 (AT) (Dkt. Nos. 18-24, 26); L.C. v. New York City Dep't of Educ., 21-cv-1250 (VSB) (Dkt. Nos. 20-27))) Plaintiffs argue that this conclusion is unfair (1) absent "clear guidance on what [the Cuddy Law Firm] can concisely provide that the courts will accept" as evidence of prevailing rates; and (2) because of the firm's need to "preserve[] the clients' rights" pending appeal.  (Pltf. Obj. (Dkt. No. 48) at 23)

This is nonsense.  Judge Parker's point is that where the Cuddy Law Firm is filing briefs and declarations that are nearly identical to filings it has made in other cases, the hours billed to that activity must reflect that the firm is not doing any original work.  And the Cuddy Law Firm has a history of recycling in IDEA fee disputes papers filed in other IDEA fee dispute cases.  See K.O., 2022 WL 1689760, at *12 ("Much of the work done on the instant briefing reiterates arguments made by [the Cuddy Law Firm] in other cases.").

In sum, this Court finds no error in Judge Parker's recommendations regarding reasonable hours expended.

### D.   <u>Rejection of Settlement Offer</u>

Judge Parker notes that on February 24, 2022, DOE offered to settle the fee dispute for $27,500, and thus Plaintiffs cannot recover fees for work billed after that date unless the Court awards Plaintiffs more than $27,500.  (R&R (Dkt. No. 48) at 20 ("An offer of settlement prohibits recovery if 'the relief finally obtained . . . is not more favorable . . . than the offer of settlement.'") (quoting 20 U.S.C. § 1415(i)(3)(D)))

Judge Parker rejects Plaintiffs' argument that they were "substantially justified" in rejecting the settlement offer based on their desire to seek (1) "significantly higher fee[s] given the prevailing market rates in the community;" and (2) an award of post-judgment interest.  (<u>Id.</u> at 21)

As to the post-judgment interest issue, the proposed settlement agreement provides that acceptance "will operate to waive Plaintiffs' right to any claim for interest on the Settlement Amount."  (Nimmer Decl., Ex. A (Dkt. No. 33-1) ¶ 6)  Judge Parker concludes, however, that this provision in the proposed settlement would not displace statutory provisions regarding post-judgment interest:

> [W]ere the Defendant to delay payment past the ninety-day statutory period for a municipality to pay all sums to a settling plaintiff, <u>see</u> N.Y. C.P.L.R. § 5003-a, by law Plaintiffs could bring a separate action seeking an award of interest on the settlement amounts.  Indeed, [the Cuddy Law Firm] is well aware of this option as it has previously pursued and obtained post-judgment interest on fee awards.  <u>See</u>, <u>e.g.</u>, <u>D.M. v. New York City Dep't of Educ.</u>, 2021 WL 4441508, at *2 (S.D.N.Y. Sept. 28, 2021) (granting [the Cuddy Law Firm] the settlement amount of $28,000 plus 9 percent interest because DOE failed to tender payment within ninety days of the settlement); <u>C.S. v. New York City Dep't of Educ.</u>, 2021 WL 1851366, at *3-4 (S.D.N.Y. Apr. 8, 2021) (awarding [the Cuddy Law Firm] 9 percent interest on a settlement that DOE failed to pay within the required ninety-day period). Thus, Plaintiffs' argument is without merit.

(<u>Id.</u> at 21-22)

Judge Parker further notes that

under 28 U.S.C. § 1961, "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." <u>True-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n</u>, 852 F.3d 217, 223 (2d Cir. 2017) (alteration in original); <u>accord</u> <u>S.J. v. New York City Dep't of Educ</u>, 2021 WL 100501, at *5 (S.D.N.Y. Jan. 12, 2021).

(<u>Id.</u> at 21-22)

In their objections, Plaintiffs complain that in the two cases cited by Judge Parker – in which Cuddy lawyers pursued interest on a late-paid settlement – the settlement agreement did not include an interest waiver. (Pltf. Obj. (Dkt. No. 48) at 24-25) But Plaintiffs have "offered no evidence that the waiver included in the settlement offer could, or would, prevent [them] from pursuing [their] statutorily required option[s] [under N.Y. C.P.L.R. § 5003-a and 28 U.S.C. § 1961]." <u>F.N. v. New York City Dep't of Educ.</u>, 2022 WL 3544128, at *6 (S.D.N.Y. Aug. 18, 2022).

Plaintiffs also complain that the R&R does not "speak to whether V.W. was substantially justified in rejecting DOE's offer at the time it was made." (Pltf. Obj. (Dkt. No. 48) at 25) But of course Judge Parker concludes that Plaintiffs were not justified in rejecting DOE's settlement offer, and in pursuing a fee award premised on inflated billing rates and an inflated number of hours billed. (R&R (Dkt. No. 46) at 7-22 ("[A]s noted above, the evidence Plaintiffs offer to support [their] requested rates do not lead to such a conclusion, as a fair reading of the recent IDEA attorneys' fees cases decided in this District shows [that] the prevailing market rates in the New York area within the relevant time frames are much lower than those requested. . . . Thus, Plaintiffs' [substantial justification] argument is without merit."))

Finally, Plaintiffs object to the R&R's citation to cases that are now on appeal. (Pltf. Obj. (Dkt. No. 48) at 25) But Plaintiffs cannot use this fact to demonstrate substantial justification. An overwhelming majority of courts in this District have concluded that the Cuddy

Law Firm is not entitled to the billing rates that it seeks here.  <u>M.M.</u>, 2022 WL 3043218, at *6 (collecting cases).

In sum, this Court finds no error in Judge Parker's recommendations concerning appropriate billing rates and hours.  This Court likewise finds no error in her determination that Plaintiffs are barred from collecting fees incurred after the DOE made its settlement offer.

<u>**CONCLUSION**</u>

For the reasons stated above, Magistrate Judge Parker's R&R (Dkt. No. 46) is adopted in its entirety.  Plaintiffs are awarded $27,340.47 in attorneys' fees and costs for both the administrative proceeding and the instant federal action, and post-judgment interest pursuant to 28 U.S.C. § 1961.

The Clerk of Court is directed to terminate the motions (Dkt. Nos. 23, 50), to enter judgment, and to close this case.

Dated: New York, New York
      March 23, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge